UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MARTELL JONES,

               Plaintiff,

v.

COLLEEN BORGEN et al.,

               Defendants.

_____/

Case No. 2:25-cv-219

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Further, under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Borgen, Beesley, Velmer, Wertanen, Kangas, Lupro, Sanchez, Johnson, Wilson, Unknown Party #1, and

Unknown Party #2. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Plaintiff's First Amendment retaliation claims and Eighth Amendment sexual harassment claims against Defendant Miller will remain in the case.

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following AMF staff in their individual and official capacities: Sergeant Colleen Borgen, Correctional Officer Noah Beesley, Correctional Officer Kristine Miller, Correctional Officer Dean Velmer, Captain Rick Wertanen, Nurse Tyler Kangas, Correctional Officer Kazie Lupro, Correctional Officer Michael Sanchez, Correctional Officer Unknown Johnson, Correctional Officer Unknown Wilson, Correctional Officer Unknown Party #1, and Correctional Officer Unknown Party #2. (Compl., ECF No. 1, PageID.1, 3.)

In Plaintiff's complaint, he alleges that on October 16, 2024, he "was classified to temporary segregation and transport[ed] to Housing Unit 4." (*Id.*, PageID.3.) When Plaintiff arrived at Housing Unit 4, he was placed "in a shower cage [and] then strip searched by" non-party Correctional Officer VanAlstine. (*Id.*) Later, "[w]hen no prison officials were in the area, [Defendant] Miller[, a female correctional officer,] stopped at the shower cage," and Defendant Miller told Plaintiff that "she wanted to watch him shower and masturbate." (*Id.*, PageID.3, 4.) After Plaintiff "declined," Defendant Miller "threatened" Plaintiff, saying that "she would falsify a fabricated and retaliatory Class I Misconduct Report . . . of Sexual Misconduct against him if he did not expose [himself] . . . to her." (*Id.*, PageID.4.) "Out of fear of receiving a misconduct report," Plaintiff exposed himself to Defendant Miller. (*Id.*)

2

Approximately two days later, on October 18, 2024, Defendant Miller "was assigned to and served meal trays to prisoners" in Plaintiff's housing unit. (*Id.*, PageID.5.) When Defendant Miller was giving Plaintiff his tray through the slot in the cell door, Defendant Miller "ordered [Plaintiff] to expose [himself] . . . and to masturbate in front of her." (*Id.*) Plaintiff "rejected [Defendant] Miller's sexual advances," and Defendant Miler said: "If you wanna keep your TV, you will show me that big black c[***]!" (*Id.* (asterisks added).) Defendant Miller then walked away.

Later, when Defendant Miller was collecting the meal trays, she again stated: "Let me see that big black c[***]!" (*Id.* (asterisks added).) Plaintiff refused, and "[i]n response, [Defendant] Miller stated to [Plaintiff], 'That's a Disobeying a Direct Order [misconduct]!'" (*Id.*) Defendant Miller then walked away. (*Id.*) "Moments later, during the conduction of a routine round, [Defendant] Miller stopped at the door of [Plaintiff's] assigned cell and again ordered him to expose [himself]." (*Id.*) Plaintiff "again refused," and Defendant Miller "threatened to [Plaintiff] that she was going to falsify a fabricated and retaliatory misconduct report against him for refusing to engage in acts of voyeurism." (*Id.*, PageID.5–6.) Thereafter, Defendant Miller "falsified a fabricated Class II Misconduct Report . . . of Disobeying a Direct Order against [Plaintiff] in retaliation for him refusing to expose [himself]." (*Id.*, PageID.6.) Plaintiff alleges that in the misconduct report, Defendant Miller claimed that Plaintiff "refused to give her a television after she ordered him to." (*Id.*) Plaintiff states that he received fifteen days' loss of privileges and "an increase in security classification points" due to the misconduct conviction. (*Id.*)

On October 19, 2024, Defendant Miller "supplied toilet paper" to Plaintiff's housing unit. (*Id.*) "After handing [Plaintiff] two rolls of toilet paper through the slot of [Plaintiff's] assigned cell door, [Defendant] Miller ordered [Plaintiff] to expose [himself]." (*Id.*) Plaintiff refused, and

3

Defendant Miller then "slammed and latched the window cover" on Plaintiff's cell door. (*Id.*) Plaintiff alleges that Defendant Miller also "threatened to [Plaintiff] that she was going to falsify a fabricated and retaliatory misconduct report against him for refusing to engage in acts of voyeurism." (*Id.*)

On October 20, 2024, Defendant Miller "conducted routine rounds" in Plaintiff's housing unit. (*Id.*) "During [Defendant Miller's] routine round, [Plaintiff] directly observed the prisoner who was across the hall and confined in cell 101 masturbating in front of [Defendant] Miller as she watched through the window of his assigned cell door." (*Id.*) That same day, Plaintiff filed a Prison Rape Elimination Act (PREA) complaint against Defendant Miller "in regard to sexual misconduct." (*Id.*)

Plaintiff claims that Defendant Miller "has a practice and documented history of persuading Velmer, Wertanen, Kangas, Johnson, Lupro, Beesley, and other male prison officials into retaliating against prisoners on her behalf." (*Id.*, PageID.7.) Plaintiff then details various interactions with Defendants Velmer, Wertanen, Kangas, Johnson, Lupro, Beesley, as well as other Defendants, some of which are wholly unconnected to Plaintiff's interactions with Defendant Miller and some of which Plaintiff claims were actions taken in retaliation for Plaintiff filing the PREA complaint against Defendant Miller on October 20, 2024. (*See id.*, PageID.7–21.)[1]

Plaintiff seeks monetary damages, and declaratory and injunctive relief. (*Id.*, PageID.29.)

---

[1] In the interest of judicial efficiency, in this opinion, the Court does not set these factual allegations because, as explained below, the Court concludes that the other Defendants are misjoined to Plaintiff's claims against Defendant Miller.

## II.    Misjoinder

### A.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related

to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his

claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Miller is the first Defendant named in the *factual* allegations in the complaint. (Compl., ECF No. 1, PageID.3, 4.) Plaintiff alleges that on October 16, 18, and 19, 2024, Defendant Miller ordered Plaintiff to expose himself and engage in sexual action, so that Defendant Miller could watch, and that when Plaintiff declined, Defendant Miller issued Plaintiff retaliatory misconduct charges or threatened to issue misconduct charges to Plaintiff. (*See id.*, PageID.4–6.)  Plaintiff claims that Defendant Miller "has a practice and documented history of persuading Velmer, Wertanen, Kangas, Johnson, Lupro, Beesley, and other male prison officials into retaliating against prisoners on her behalf." (*Id.*, PageID.7.) The remainder of Plaintiff's complaint details various interactions with Defendants Velmer, Wertanen, Kangas, Johnson, Lupro, Beesley, as well as the other named Defendants, some of which are wholly unconnected to Plaintiff's interactions with Defendant Miller and some of which Plaintiff claims were actions taken in retaliation for Plaintiff filing the PREA complaint against Defendant Miller on October 20, 2024. (*See id.*, PageID.7–21.)

It appears that Plaintiff believes that all of the events that followed Plaintiff's interactions with Defendant Miller in October 2024 are related to Plaintiff's interactions with Defendant Miller simply because they occurred during his incarceration at AMF and because he subjectively views all of the events as part of a vast retaliatory conspiracy against him. However, Plaintiff's subjective belief and interpretation of events does not transform separate events into events that arise out of the same transaction or occurrence. Under these circumstances, the Court concludes that Plaintiff has improperly joined Defendants Borgen, Beesley, Velmer, Wertanen, Kangas, Lupro, Sanchez, Johnson, Wilson, Unknown Party #1, and Unknown Party #2 to this action.

## B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Borgen, Beesley, Velmer, Wertanen, Kangas, Lupro, Sanchez, Johnson, Wilson, Unknown Party #1, and Unknown Party #2 to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per

curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, Plaintiff's complaint involves events that occurred starting in late 2024. (*See generally* Compl., ECF No. 1.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendants Borgen, Beesley, Velmer, Wertanen, Kangas, Lupro, Sanchez, Johnson, Wilson, Unknown Party #1, and Unknown Party #2, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Borgen, Beesley, Velmer, Wertanen, Kangas, Lupro, Sanchez, Johnson, Wilson, Unknown Party #1, and Unknown Party #2 because they are misjoined. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.[2]

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

---

[2] Plaintiff is advised that any new civil actions in this Court must be filed on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and at the time of filing his complaint, Plaintiff must pay the required filing fees or apply in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV.    Discussion

Plaintiff brings First Amendment retaliation claims and Eighth Amendment sexual harassment claims against remaining Defendant Miller. (*See* Compl., ECF No. 1, PageID.26–27 (setting forth Plaintiff's claims against Defendant Miller in paragraphs 242 and 248).)

10

At this stage in the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Based on Plaintiff's factual allegations against Defendant Miller, which are detailed above in Part I, the Court will not dismiss Plaintiff's First Amendment retaliation claims and Eighth Amendment sexual harassment claims against Defendant Miller at this time.

## V.      Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, the Court will drop Defendants Borgen, Beesley, Velmer, Wertanen, Kangas, Lupro, Sanchez, Johnson, Wilson, Unknown Party #1, and Unknown Party #2 as misjoined pursuant to Rule 21 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's claims against these Defendants without prejudice. Plaintiff First Amendment retaliation claims and Eighth Amendment sexual harassment claims against Defendant Miller remain in the case.

An order consistent with this opinion will be entered.


Dated:    March 30, 2026                              /s/ Robert J. Jonker
                                                      Robert J. Jonker
                                                      United States District Judge

11